UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| HILDA L. SOLIS, Secretary of Labor, ) <br> United States Department of Labor ) <br> ) <br>       *Plaintiff*, ) <br> ) <br> v. ) <br> ) <br> LAURELBROOK SANITARIUM AND ) <br> SCHOOL, INC., ) <br> ) <br>       *Defendant*. ) | No.: 1:07-CV-30 <br><br> Chief Judge Curtis L. Collier |

## **MEMORANDUM**

The Court held a bench trial that lasted seven days between August 19, 2008, and April 6, 2009. Plaintiff Hilda L. Solis, Secretary of Labor, United States Department of Labor ("Plaintiff") alleged that Defendant Laurelbrook Sanitarium and School, Inc. ("Defendant") has violated certain federal labor statutes and regulations.

Plaintiff brings this action for injunctive relief under the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §§ 201-219. Pursuant to 29 U.S.C. § 217, Plaintiff seeks to enjoin Defendant from violating 29 U.S.C. §§ 212(a), 212(c), and 215(a)(4) and Child Labor Regulation 3, 29 C.F.R. §§ 570.31-.37.

The Court heard the testimony of witnesses and received a large number of exhibits. Pursuant to Fed. R. Civ. P. 52(a)(1), the Court now issues its findings of fact and conclusions of law, which explain why the Court will enter judgment for Defendant.

**I.    FINDINGS OF FACT**

    1.    Plaintiff is the duly appointed and confirmed Secretary of Labor, and has brought

suit alleging violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201-219, and regulations promulgated there under.

2. Defendant is a duly constituted Tennessee non-profit corporation, having its place of business near Dayton, Tennessee. Defendant is domiciled in Rhea County, Tennessee.

3. This Court has jurisdiction of this litigation pursuant to 29 U.S.C. §§ 212(b) & 217, and 28 U.S.C. §§ 1331 and 1345.

4. Venue lies in the United States District Court for the Eastern District of Tennessee, Southern Division.

5. Defendant is a non-profit corporation, exempt from income tax under Internal Revenue Code Section 501(c)(3), founded by a group of Seventh-day Adventists in 1950. Its charter was issued in 1956.

6. Defendant is a religious based organization and follows the tenets and teachings of the Seventh-day Adventist Church.

7. Central to these beliefs and teachings are the works of Ellen G. White, the founder of the Seventh-day Adventist Church.

8. Part of Ms. White's teachings included the necessity of children receiving an education that includes practical training.

9. Defendant operates in accordance with this goal of fulfilling Seventh-day Adventist beliefs.

10. For that purpose Defendant operates a bona fide high school, boarding school for grades 9 through 12, elementary school for children of staff members, and

2

Sanitarium as facets of its overall education program.

11. Students spend part of their school day in traditional educational classes.

12. Students spend part of their school day experiencing and learning practical, i.e., vocational, skills.

13. The practical and educational aspects of teaching at Defendant are integrated, with every academic teacher also teaching some part of the vocational program.

14. Defendant's stated mission has been "the education of young people, providing a balanced program of spiritual, academic and vocational training to high school students (grades 9 through 12) with a goal of reproducing the character of God and preparing for His service."

15. One component of Defendant's philosophy and education is to teach students to be able to serve as missionaries in foreign lands.

16. Defendant teaches its students different skills so that they can support themselves as missionaries, either individually or as a member of a team.

17. Boarding students at Defendant's school are kept busy with assigned tasks that help keep them occupied in wholesome activities, that teach them practical skills about work, responsibility, the dignity of manual labor, and that also contribute to the maintenance of Defendant.

18. Defendant is an approved and accredited school of the State of Tennessee Department of Education.

19. In Tennessee, schools such as Defendant are approved through an authorized accrediting agency.

20. The accrediting agencies must obtain recertification or reauthorization every five years.

21. Defendant has been an approved school by the State of Tennessee since the 1970s.

22. Defendant and several other similar schools formed the E.A. Sutherland Education Association ("EASEA") for the purpose of creating an accrediting agency when the Seventh-day Adventist Church decided to offer approval for only denominational schools and not self-supporting schools.

23. EASEA has been an approved Tennessee Department of Education accrediting agency since 2002.

24. Defendant is accredited by EASEA.

25. Most of the adult staff members at Defendant are volunteers who are Seventh-day Adventist adherents and receive stipends rather than set salaries. Staff members agree to perform duties as assigned at Defendant, whether those duties involve teaching or general maintenance.

26. Staff members "affirm themselves to a work of self sacrificing missionary endeavor" which involves an acceptance of the member's "assigned missionary endeavor" and must "realize[] he must work and instruct young people."

27. The only non-Seventh-day Adventist Church staff members at Defendant are the cook and licensed nursing staff at the Sanitarium.

28. Adult staff members generally live in homes on Defendant's campus, as do several retired staff members.

29. In addition to housing and food Defendant provides maintenance, lawn care, and

firewood for active and retired staff members who request those services.

30. High school students attend academic classes for four hours each day, and vocational training for four hours each day.

31. High school freshmen and seniors attend academic classes in the morning and vocational classes in the afternoon; sophomores and juniors attend academic classes in the afternoon and vocational classes in the morning.

32. Defendant offers the following vocational courses: Agriculture, Building Arts, Grounds management, Mechanical Arts, Office Procedures, Plant Services, Water Services, Certified Nurses Assistant, Child Development, Environmental Services, and Food Service.

33. Defendant as part of its religious based educational program operates a 50-bed intermediate care nursing home, the Sanitarium, and receives Medicaid funding for the care it provides.

34. Students are assigned, as part of their practical or vocational training, to the Sanitarium kitchen and housekeeping departments.

35. Students that are sixteen years of age may participate in Defendant's Certified Nursing Assistant ("CNA") training, which program is approved by the State of Tennessee licensing authority.

36. After students receive their CNA certification, they may be assigned to the Sanitarium to provide CNA services to patients.

37. Although students provide services to patients, this is in relation to their training and in line with the guiding philosophy of Defendant.

38. Defendant is sufficiently staffed so that if the students did not perform the work at the Sanitarium adult staff members could continue to provide the same services.

39. However, since the Sanitarium is an integral part of Defendant, there would be no purpose served by having the Sanitarium as an isolated operation.

40. Students do not earn nor receive wages for any work they perform at Defendant.

41. Students are not entitled to a job at Defendant after graduation and are expected to move on after graduation.

42. Defendant adequately supervises its students and provides adequate and reasonable safeguards to protect students from hazardous activities.

43. Defendant is committed to the safety of its students, is safety conscious, and has performed reasonably well in making sure that students performing work are safe.

44. Students learning skills are provided hands-on training with tools that are normally used in those skills and this hands-on experience is similar to that received in public school vocational training courses.

45. Hands on experience with such tools under appropriate supervision is not a hazardous activity.

46. Many of Defendant's vocational courses have been approved by the Tennessee Department of Education for transfer credits so that any student may transfer to another school in Tennessee and receive credit for the course offered by Defendant.

47. Several other of Defendant's courses have been approved as "Special Courses," which allows the transferee school to accept the courses at its discretion.

48. Defendant provides important tangible and intangible training to its students and the

students reap great benefits from the training and education provided by Defendant.

49. Any benefits derived by Defendant from the students' work is secondary to its religious mission and therefore any such benefits are much less than those received by the students.

50. Because Defendant is a religious institution conducting a bona fide school, it is not engaged in the competitive open market for labor.

51. Defendant draws from members of the Seventh-day Adventist Church for staff members on the whole.

52. If there was no school there would be no Sanitarium and the students would not be working there.

53. Therefore, students do not displace any adult employees or others that might be willing to work in a nursing home.

54. Defendant's vocational program is a bona fide program and it compares favorably with vocational programs operated by public high schools in the area.

55. Because Defendant operates a boarding school it cannot compare perfectly with a public school where students are only in school for part of the day and under the supervision of their parents the remainder of the time. Defendant is in charge of boarding students 24 hours a day and its efforts to keep students gainfully occupied is in keeping with its religious charter to teach students moral character.

## II. CONCLUSIONS OF LAW

1. The Fair Labor Standards Act defines an "employee" as a person "employed by an

employer." 29 U.S.C. § 3(e)(1). "Employ" is defined as "to suffer or permit to work." 29 U.S.C. § 203(g). Work is defined as time "controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Chao v. Tradesmen Int'l*, 310 F.3d 904, 907 (6th Cir. 2002) (quoting *Tenn. C., I. & R. Co. v. Muscoda*, 321 U.S. 590, 598 (1944)).

2. Although "the statutory definition is exceedingly broad, [] it does have its limits." *Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 295 (1985) (hereinafter, *Alamo*). "An individual who, 'without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit,' is outside the sweep of [FLSA]." *Id.* (quoting *Walling v. Portland Terminal Co.*, 330 U.S. 152 (1947)).

3. "The question of whether a particular set of facts and circumstances constitutes work under the FLSA is a question of law." *Farmer v. Ottawa County*, 2000 U.S. App. LEXIS 7224 (6th Cir. Apr. 13, 2000) (citing *Birdwell v. City of Gadsden, Ala.*, 970 F.2d 802, 807 (11th Cir. 1992)); *Jordan v. IBP, Inc.*, 542 F. Supp. 2d 790, 802 (M.D. Tenn. 2008); *cf. Imars v. Contractors Mfg. Servs., Inc.*, 165 F.3d 27 (6th Cir. 1998). However, the nature of the duties is a question of fact. *Jordan*, 542 F. Supp. 2d at 802 (citing *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir. 2004)).

4. In *Portland Terminal*, the Supreme Court considered whether participants in a training program for prospective railroad brakemen were employees of the railroad. 330 U.S. at 148. In holding the participants were not employees, the Court noted the definition of "employ" "was obviously not intended to stamp all persons as

8

employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another. Otherwise, all students would be employees of the school or college they attended." *Id.* at 152. The Court noted:

> The definitions of "employ" and of "employee" . . . cannot be interpreted so as to make a person whose work serves only his own interest an employee of another person who gives him aid and instruction. Had these trainees taken courses in railroading in a public or private vocational school, wholly disassociated from the railroad, it could not reasonably be suggested that they were employees of the school within the meaning of the Act.

*Id.* at 152-53. As the Supreme Court later summarized, "The trainees were in much the same position as students in a school." *Alamo*, 471 U.S. at 300.

5. The Sixth Circuit considered whether railroad trainees constitute employees under the FLSA in *Walling v. Nashville, C. & St. L. R. Co.*, 155 F.2d 1016, 1018 (6th Cir. 1946), *aff'd*, 330 U.S. 158, 160 (1947). Rejecting that contention, the Sixth Circuit expressly agreed with the reasoning of the Fifth Circuit in *Walling v. Jacksonville Terminal Co.*, 148 F.2d 768, 770 (5th Cir. 1945).

6. Consistent with *Portland Terminal*, *Jacksonville Terminal* implies that the determination of student versus employee is based on whether the benefit of the work is for the student or the employer. 148 F.2d at 770 ("The words 'suffer or permit to work' must be understood with common sense. In the present case the Company did suffer the trainee to work on its premises and with its appliances, but the *benefit immediately in view was to the trainee*, that he might learn, might qualify himself for a job which he desired.") (emphasis added).

9

7. Thus, a student who works primarily for his own advantage is not performing work within the meaning of the FLSA. *Portland Terminal*, 330 U.S. at 152; *Jacksonville Terminal*, 148 F.2d at 770; *Tradesmen Int'l*, 310 F.3d at 907; *accord McLaughlin v. Ensley*, 877 F.2d 1207, 1209 (4th Cir. 1989) ("[T]he general test used to determine if an employee is entitled to the protections of the Act is whether the employee or the employer is the primary beneficiary of the trainees' labor."); *Marshall v. Baptist Hospital, Inc.*, 668 F.2d 234, 236 (6th Cir. 1981) (holding district court did not use erroneous test of liability in its conclusion that a group of students were employees because their employer was the primary beneficiary of their work). The determination of whether work qualifies as employments rests upon the totality of the circumstances. *Blair v. Wills*, 420 F.3d 823, 829 (8th Cir. 2005); *Marshall v. Regis Educational Corp.*, 666 F.2d 1324, 1327 (10th Cir. 1981).

8. In *Blair v. Wills*, 420 F.3d 823, 829 (8th Cir. 2005), a former student sued his boarding school alleging it violated the FLSA by requiring him to perform chores. The Eight Circuit rejected the claim, concluding the student's chores mainly benefitted the student, not the school:

> School administrators testified that chores were an integral part of the educational curriculum at Mountain Park and Palm Lane, and those chores were primarily for the students', not the Appellees', benefit. Administrators further testified that the chores were intended to instill in each student a sense of teamwork, responsibility, accomplishment, and pride. Although having students perform chores helped defray certain costs that the Appellees would have incurred had they hired employees to perform those tasks, looking at the totality of the economic circumstances, there is no evidence on which a reasonable jury could conclude that Blair's activities constituted employment under the FLSA.

10

*Id.*

9. Other courts have likewise rejected claims that students were performing work within the meaning of FLSA simply because the schools derived some benefit. In *Bobilin v. Board of Education*, 403 F. Supp. 1095 (D. Haw. 1975), a group of students challenged a state board of education regulation requiring the students to perform cafeteria duty. Rejecting their FLSA claim, the district court reasoned "it would be absurd for this Court to rule that any educational activity would be placed within the requirements of the FLSA simply because there may be an economic benefit to the institution involved." *Id.* at 1107-08. Many tasks not purely "educational" do teach responsibility and other important fundamentals. *Id.* at 1108. The *Bobilin* court concluded that the fact the state saved money by drafting students for cafeteria duty did not render the students' service to be employment, especially when the plaintiffs could not rebut the state's assertions about educational goals. *Id.* The court also noted that the department of education—not the student plaintiffs—is charged with determining the educational merits of school activities. *Id.* at 1108-09.

10. In *Marshall v. Regis Educational Corp.*, 666 F.2d 1324 (10th Cir. 1981), the Secretary of Labor alleged resident assistants were employees because the college compensated them and received an immediate economic benefit from their services, thus displacing employees the college would have otherwise been required to hire. *Id.* at 1326. The Tenth Circuit rejected the government's theory that the college employed students by enlisting them to help promote safe and secure accommodations. *Id.* at 1327. Rather, the students were like athletes and student

11

government leaders who receive financial aid. *Id.* at 1328. The Court distinguished resident assistants from other positions which could be classified as employees:

> Our holding that RA's are not employees does not require the conclusion that no student working at the College would be within the scope of the FLSA. No such inference should be drawn. There are undoubtedly campus positions which can be filled by students and which require compliance with the FLSA. Students working in the bookstore selling books, working with maintenance, painting walls, etc. could arguably be "employees". The query is whether the RA's at Regis are more like sales clerks or more like students in other campus programs receiving financial aid.

*Id.* at 1327-28.

11. A district court recently concluded students performing chores including cleaning and essentially acting as a security guard did not qualify as work. *Woods v. Wills*, 400 F. Supp. 2d 1145, 1166 (E.D. Mo. 2005), *aff'd*, 225 F. App'x 420 (8th Cir. 2007). The court concluded:

> These tasks were part of the curriculum and were intended to help the development of personal qualities in the students, such as self-respect and responsibility. Although having students perform these tasks rather than hiring adults helped defray the defendants' costs, under the totality of the economic circumstances, the complained-of activities were not "work" under the FLSA and the defendants were not "employers."

*Id.* Likewise, in *Lane v. Carolina Beauty Systems, Inc.*, the district court concluded a vocational school student was not an employee even though the school derived some benefit from her work there because the primary benefit was to the student. 1992 U.S. Dist. LEXIS 15338 (M.D.N.C. July 2, 1992).

12. In support of her contention that Defendant's students perform work, Plaintiff relies on *Reich v. Shiloh True Light Church of Christ*, in which the district court

12

determined that a church was using unpaid children to perform home construction in violation of FLSA. 895 F. Supp. 799 (W.D.N.C. 1995), *aff'd*, 1996 U.S. App. LEXIS 10427 (4th Cir. 1996). The Fourth Circuit agreed the church was using children to perform labor and was sometimes compensating the children while seeking to disguise the wages. Customers would make donations to the church in exchange for the work. The church was collecting profits for the work of children, the court concluded in determining the church was the primary beneficiary. Although the church's program began as a vocational program, it had converted into a commercial enterprise that competed with other contractors.

13. The facts of this case do not resemble *Shiloh True Light Church of Christ*. Rather, Defendant is a school with a legitimate vocational educational program, and is not competing in the open market for labor. Although there is benefit to the school and sanatarium from the students' activities, the totality of the circumstances shows that the primary benefit is to the students, who learn practical skills about work, responsibility, and the dignity of manual labor in a way consistent with the religious mission of their school. That the school earns some revenue from the sale of wood pallets made by students—just like students at nearby public schools perform activities for which the schools earn money—does not transform the vocational program into a commercial enterprise.

14. The vocational program is guided by Defendant's religious philosophy. The work performed by students at the sanatarium is a legitimate part of this vocational program. The students are not displacing workers. They are working for their own

13

broad educational benefit, and thus are not performing work within the meaning of the Fair Labor Standards Act.

### III. CONCLUSION

For the foregoing reasons, the Court will **DENY** Plaintiff's request for injunctive relief and enter judgment for Defendant.

An Order shall enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**