UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ELAINE L. CHAO, Secretary of Labor, United States Department of Labor, *Plaintiff*, v. LAURELBROOK SANITARIUM AND SCHOOL, INC., *Defendant*. | 1:07-CV-30 Chief Judge Curtis L. Collier |

## MEMORANDUM

Before the Court is Defendant Laurelbrook Sanitarium and School, Inc.'s ("Defendant") motion for attorneys' fees, expenses, and costs (Court File No. 92) and Defendant's motion to amend its motion for attorneys' fees, expenses, and costs (Court File No. 108).[1] Plaintiff Elaine L. Chao, Secretary of Labor for the United States Department of Labor, who has been replaced by current Secretary of Labor Hilda L. Solis ("Plaintiff") filed a response (Court File No. 100) and Defendant submitted a reply (Court File No. 103). This Court held a hearing on Defendant's motion for attorneys' fees on February 8, 2012, and both parties engaged in oral argument on Defendant's motion.

For the following reasons, the Court **GRANTS IN PART** Defendant's motion for attorneys' fees, expenses, and costs (Court File No. 92) and **GRANTS** Defendant's motion to amend its motion for attorneys' fees, expenses, and costs (Court File No. 108). Defendant will receive an award of $218,629.94 in attorneys' fees, expenses, and costs based on its original motion and supplemental

---

[1] Defendant also filed a supplemental brief to its motion for attorneys' fees (Court File No. 107), which the Court will consider in conjunction with Defendant's motion for attorneys' fees (Court File No. 92).

brief, and an additional award of $13.045.85 based on the invoices submitted with Defendant's motion to amend, for a **total award of $231,675.79**.
.

I.      **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

On February 12, 2007, Plaintiff brought an action for injunctive relief against Defendant under the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §§ 201-219. Plaintiff sought to enjoin Defendant from violating 29 U.S.C. §§ 212(a), 212(c), and 215(a)(4), as well as Child Labor Regulation 3, 29 C.F.R. §§ 570.31-.37. This Court held a seven-day bench trial that took place between August 19, 2008, and April 6, 2009. The Court had to determine whether the students at Defendant were performing work within the meaning of the FLSA. If so, Defendant would be violating the laws that regulate against child labor. After surveying case law from the United States Supreme Court, the United States Court of Appeals for the Sixth Circuit, and other circuits, this Court determined the primary inquiry in making this determination must be whether or not the students worked primarily for their own advantage (Court File No. 84). A student working primarily for his own advantage was not performing work within the meaning of the FLSA. Based on the totality of the evidence, the Court concluded the students at Defendant inured the primary benefit of their labor and therefore were not performing work within the meaning of the FLSA.

The United States Court of Appeals for the Sixth Circuit affirmed this Court's decision. In an opinion filed April 28, 2011, the Sixth Circuit agreed that the Laurelbrook students were not "employees" for purposes of the FLSA. *See Solis v. Laurelbrook Sanitarium & School, Inc.*, 642 F.3d 518 (6th Cir. 2011). Thus, the FLSA's prohibitions on child labor were inapplicable to the case at hand. Although the Sixth Circuit observed there was not a settled test for determining whether a

2

student was an employee for purposes of the FLSA, it agreed with this Court's analysis and held that the "primary benefit" test (that is, "ascertain[ing] which party derives the primary benefit from the relationship") is the most appropriate method for determining whether there is an employment relationship in a "training or learning situation." *Id.* at 528. The Sixth Circuit further concluded this Court properly applied the primary benefit test.

Defendant filed its motion for attorneys' fees, expenses, and costs on November 1, 2011. On February 8, 2012, this Court held a hearing and afforded both parties an opportunity to make oral arguments. Defendant subsequently filed a motion to amend its motion for attorneys' fees on February 17, 2012.

## II. DISCUSSION

Defendant filed its motion for attorneys' fees, expenses, and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"). As noted in the EAJA's legislative history, the drafters of the EAJA recognized that "[t]he economic deterrents to contesting governmental action are magnified in these cases by the disparity between the resources and expertise of these individuals and their government." *Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 445-46 (6th Cir. 2009) (quoting H.R. Rep. No. 96-1418, at 5-6 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4984, 4984). Hence, "[t]he purpose of the bill is to reduce the deterrents and disparity by entitling certain prevailing parties to recover an award of attorney fees, expert witness fees and other expenses against the United States, unless the Government action was substantially justified." *Id.* The Court must be satisfied that the following four conditions are met before awarding attorneys' fees under the EAJA: (1) the fee applicant must be a prevailing party; (2) the position of the government is not

3

substantially justified; (3) no special circumstances exist to make the award unjust; and (4) the requisite fee application must have been filed within thirty days of the final judgment. *See* 28 U.S.C. § 2412(d); *Townsend v. Soc. Sec. Admin.*, 486 F.3d 127, 129-30 (6th Cir. 2007) (citing *Comm'r, INS v. Jean*, 496 U.S. 154, 158 (1990)).

The parties do not dispute that Defendant was the prevailing party, nor do they contest that Defendant's motion for attorneys' fees was filed in a timely manner. Therefore, the only issues remaining are (1) whether the Government's position was substantially justified and (2) whether any special circumstances exist that would make an award of attorneys' fees unjust.

### A.  Substantial Justification

Plaintiff argues Defendant's motion for attorneys' fees should be denied because Plaintiff's position was "substantially justified." The government--here, the Secretary of the Department of Labor--bears the burden of establishing that its position was substantially justified. *Pickering v. Mukasey*, 306 F. App'x 246, 248 (6th Cir. 2009); *Sec'y, Dep't of Labor v. Jackson Cnty. Hosp., Inc.*, No. 96-6664, 98-6665, 2000 WL 658843, at *3 (6th Cir. 2000). "[P]osition of the United States" is defined in the EAJA as being not only "the position taken by the United States in the civil action" but also "the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D). Stated differently, "the government's 'position' comprehends both its underlying action and its litigation position." *Pickering*, 306 F. App'x at 248.

"Substantially justified" does not mean "'justified to a high degree,' but rather 'justified in substance or in the main'--that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The government's position should have a "reasonable basis both in law and fact." *Id.*; *Howard v. Barnhart*, 376 F.3d 551, 554 (6th Cir. 2004). Substantial

4

justification must be "more than merely undeserving of sanctions for frivolousness." *Pierce*, 487 U.S. at 566. At the same time, "Congress did not . . . want the 'substantially justified' standard to 'be read to raise a presumption that the Government position was not substantially justified simply because it lost the case.'" *Scarborough v. Principi*, 541 U.S. 401, 415 (2004).

Plaintiff was not substantially justified in its position at trial nor was it substantially justified in bringing suit. The proper standard that Plaintiff should have used--as noted by this Court and affirmed by the Sixth Circuit--was the primary benefit test. In applying the primary benefit test, Plaintiff should have considered whether the primary benefit of the students' work inured to the students or Defendant. If the students were the primary beneficiaries, then they were not performing work within the meaning of the FLSA. However, if Defendant was the primary beneficiary, then the students were performing work within the meaning of the FLSA. At trial, this Court found, among other things, that Defendant is a religious institution and is an approved and accredited school of the State of Tennessee Department of Education (Court File No. 84). Defendant follows the teachings and tenets of the Seventh Day Adventist Church, which includes providing an education for children that incorporates practical training. Hence, students spend part of their day in a traditional educational setting and the other part of their day receiving practical or vocational training. Several of Defendant's vocational programs have been approved by the Tennessee Department of Education.

Despite the vast array of training programs offered by Defendant, the students are the ones who receive the primary benefit from their work. For example, Defendant operates a nursing home facility called the Sanitarium. Some students are assigned to the Sanitarium kitchen or housekeeping departments as part of their training. Students ages sixteen and older have the opportunity to participate in Defendant's Certified Nursing Assistant ("CNA") program and provide services to the

5

Sanitarium patients. Even though the students perform work at the Sanitarium, the Sanitarium is not dependent on student labor and the students do not displace any adult workers or others who might be willing to work for Defendant. Moreover, the students who are trained at the Sanitarium or through other assignments at Defendant obtain both tangible and intangible skills through the work, which is in keeping with the school's mission. Finally, this Court recognizes that Defendant is a boarding school and must find ways to keep its students occupied in a meaningful way even after the school day would ordinarily end for students at non-residential schools. Hence, while the Court acknowledges that Defendant may receive some secondary benefits from the students' labor, the evidence shows that students receive the primary benefit. Accordingly, Plaintiff's position at trial was not substantially justified.

This Court also concludes Plaintiff's decision to bring the underlying action was not substantially justified. Plaintiff argues, due to the absence of clear law, it relied upon the six-factor test created by the Wage and Hour Division of the Department of Labor ("WHD") and determined Defendant was acting in violation of the FLSA.[2,3] However, under this or any other test, Defendant

---

[2] The WHD six-factor test has the following required elements: "(1) the training, even though it includes actual operation of the facilities of the employer is similar to that which would be given in a vocational school; (2) the training is for the benefit of the trainees or students; (3) the trainees or students do not displace regular employees, but work under their close observation; (4) the employer that provides the training derives no immediate advantage from the activities of the trainees or students, and on occasion his operations m[a]y actually be impeded; (5) the trainees or students are not necessarily entitled to a job at the conclusion of the training period; and (6) the employer and the trainees or students understand that the trainees or students are not entitled to wages for the time spent in training." *Solis*, 642 F.3d at 524-25 (citing W.H. Pub. 1297, at 4-5). All factors must be met for the trainees or students to not be considered "employees."

[3] Among other things, a court can consider "the underlying clarity of the law at the time the Government took its position" in determining whether the Government's position was substantially justified. *Johnson v. Astrue*, No. 1:09CV2959, 2011 WL 4729933, at *1 (N.D. Ohio Oct. 7, 2011) (citing *Hartmann v. Stone*, 156 F.3d 1229 (6th Cir. 1998)). However, even assuming the law in this

6

avers Plaintiff failed to thoroughly investigate and examine the underlying facts before reaching its position and, had it done so, it would have realized its position was not supported by the facts (Court File No. 95 at 9; Court File No. 103 at 4). This Court agrees with Defendant in light of the evidence in the record even as it pertains to the WHD six-factor test. The evidence shows the training received by the students resembled that of other similar programs; the training was for the benefit of the students; the students did not displace regular employees; Defendant received no immediate advantage from the student labor; the students were not entitled to a job at the end of their training; and the students were not entitled to wages for their work. Had Plaintiff performed a more thorough investigation prior to bringing suit it would have discovered it lacked sufficient grounds to pursue legal action against Defendant.

Finally, this Court has determined Plaintiff's remaining arguments are without merit. Plaintiff argues Defendant's initial response to the suit was further proof that Plaintiff was substantially justified in taking action. For example, Plaintiff notes Defendant did not request a

---

Circuit was unclear, the Court of Appeals for the Sixth Circuit had the following to say about Plaintiff's reliance on the WHD six-factor test:

> We find the WHD's test to be a poor method for determining employee status in a training or educational setting. For starters, it is overly rigid and inconsistent with a totality-of-the-circumstances approach, where no one factor (or the absence of one factor) controls. . . . Moreover, at least one court has found the test's all-or-nothing approach inconsistent with prior WHD interpretations and opinions endorsing a flexible approach, thereby diminishing any persuasive force the test might be entitled to under *Skidmore*. *See Parker Fire*, 992 F.2d at 1026. Furthermore, the test is inconsistent with Portland Terminal itself, which, as outlined below, suggests that the ultimate inquiry in a learning or training situation is whether the employee is the primary beneficiary of the work performed. While the Secretary's six factors may be helpful in guiding that inquiry, the Secretary's test on the whole is not.

*Laurelbrook*, 642 F.3d at 525.

hearing or contest the preliminary injunction. Plaintiff also notes that, after the suit was filed, Defendant entered into compliance with the E.A. Sutherland Education Association's ("EASEA") accreditation requirements. Plaintiff's attempt to establish a correlation between Defendant's actions and Plaintiff's legal efforts, however, is purely speculative. In fact, Defendant responded to Plaintiff's allegations by noting the school is constantly improving its program and the changes made at that time were no exception. Defendant also notes that its decision to not challenge the preliminary injunction--which Plaintiff claims is the impetus for Defendant improving its curriculum--was just as likely motivated by the fact that it needed more time to marshal resources to do so given its strained financial circumstances (s*ee* Court File No. 103 at 5, 8).

Plaintiff also argues several circuits have held that a case that is able to survive summary judgment is presumed to be substantially justified. *See United States v. Thouvenot, Wade & Moerschen, Inc.*, 596 F.3d 378, 382 (7th Cir. 2010). Here, however, the Court did not rule on either Plaintiff's motion for partial summary judgment or Defendant's request in its response brief for summary judgment. The Court's decision was based in part on the short time frame between the parties' filings and the date of trial. Hence, the mere fact the Court did not grant or deny Plaintiff's motion is not evidence that its position was substantially justified.

### B. Special Circumstances

Plaintiff claims special circumstances exist to make an award of attorneys' fees unjust. Referencing the legislative history of the EAJA, Plaintiff notes "[t]his 'safety valve' helps to insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts. It also gives the court discretion to deny awards where equitable considerations dictate an award should not be made."

8

H.R. Rep. No. 96-1418, at 11 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4984, 4990; S. Rep. No. 96-253, at 7 (1979). Plaintiff claims the Secretary is tasked by Congress to enforce laws affecting the public's interest in the safety and well-being of working youth and, here, "[t]he lack of training, the failure to substantially comply with its own unwritten policies about the vocational training program, not to mention the guidelines of its own accrediting agency, EASEA, and the risk of harm to the children" all serve as "special circumstances" that justified the Secretary's intervention.

None of the illustrations offered by Plaintiff, however, appear to be "special" circumstances that set this case outside the norm. As noted by Defendant, Plaintiff is generally tasked with the responsibility of protecting the safety and well-being of workers and this matter falls within that realm of cases. Plaintiff has also failed to show Defendant was operating without adequate safety and supervision measures in place. Finally, as noted earlier, to the extent Defendant improved its policies and curriculum, Plaintiff's efforts to take credit for these changes is based on pure speculation. Hence, Plaintiff has failed to show any special circumstances exist to justify denying Defendant an award of attorneys' fees.

Moreover, that Plaintiff was dealing with a religious school and a school of limited financial resources, should have given Plaintiff pause. When a religious institution is the object of governmental action, serious consideration should be given to the First Amendment implications of the contemplated actions. Additionally, the limited financial resources of a school such as Defendant should cause a governmental entity to examine its contemplated action more closely to ensure it is not bullying an overwhelmed foes.

In light of the fact that Plaintiff's position was not substantially justified and there were no special circumstances, this Court concludes Defendant should receive attorneys' fees, expenses, and

9

costs. The Court will now proceed to determine the award amount.

## III. AWARD AMOUNT

### A. Attorneys' Fees

Defendant seeks attorneys' fees for work performed related to this case. The statute provides that the fee award should not exceed $125 per hour "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). Defendant seeks attorneys' fees for work performed during the years 2007 through 2012 at an hourly fee range of $154-168, taking into account the appropriate cost of living adjustment.[4] At the hearing, Plaintiff did not raise any objections to the award including a cost of living adjustment.

In the Eastern District of Tennessee, the appropriate formula for calculating cost of living adjustments was described in *Cook v. Barnhart*, 246 F. Supp. 2d 908, 910 (E.D. Tenn. 2003). *Cook* states that legal services provided in a particular year will be computed using a rate based on the "annual average" Consumer Price Index for the prior year. *Id.* The parties are in agreement that this would be the appropriate formula to use in this case.[5]

---

[4] Originally, Defendant sought attorneys' fees in the amount of $215 per hour based on its attorneys' "unique qualifications." However, at the hearing, Defendant conceded that this standard would not be satisfied under the current statute and relevant case law.

[5] The Court agrees with the hourly rate proposed by Defendant for all years except 2009. For 2009, the Court will use an hourly rate of $165, which is based on the *Cook* formula amount for 2009. For all entries in or after 2011, Defendant proposes the Court award $168 per hour, which is based on the *Cook* formula amount for 2011. Although the *Cook* formula would likely result in a higher fee amount for 2012, the Court will use the amount proposed by Defendant for both 2011 and 2012.

10

Plaintiff disputes specific time entries believed to be unrelated to the current litigation. In particular, Plaintiff flags entries that deal with "media relations; immigration issues; a state health audit that happened to occur during the pendency of the case; the broader impact of the present case; and assistance to a non-party who sought contact information for a government attorney" (Court File No. 100 at 23). Plaintiff asks for the following reduction in attorney time in light of these entries: 6.4 hours in 2007; 3.7 hours in 2008; and 1.17 hours in 2009. Post-hearing, Defendant withdrew some of those entries flagged by Plaintiff for reasons explained in its supplemental brief.[6] However, of the remaining entries, the Court concludes these hours should be included as part of Defendant's reasonable fee award under the EAJA. Defendant claims the March 24, 2008 entry labeled "TC w/ Paul Prechette re: immigration problems stemming from DOL delay" pertained to facts related to the ongoing settlement discussions as well as potential trial evidence related to staffing concerns (Court File No. 107-1). Similarly, Defendant claims the May 13, 2008 entry in which Attorney Deborah Ausburn, among other things, "draft[ed] letter re: impact of case beyond Laurelbrook" pertained to Defendant's legal strategy and potential evidence. Because this Court concludes these matters were related to Defendant's trial strategy and litigation efforts, the attorney hours should be included as part of the fee award.

Plaintiff also contends Defendant should not be able to recover attorneys' fees for time spent in February, April, and May 2007 addressing media-related matters. However, as explained by Defendant, these were not efforts to sway public opinion, but rather an effort to explain to current parents and supporters, as well as potential staff, the pending lawsuit and its commitment to safety

---

[6] Defendant withdrew a total of 0.3 hours of attorney time in 2007 and 0.6 hours of attorney time in 2008 (Court File No. 107). Defendant also notes that some of the referenced entries were never included in the original calculations.

throughout the proceedings. Defendant notes that the February 2007 entry pertained to a two-hour conversation between Attorney Ausburn and Defendant about Defendant's answer due in less than two weeks. Approximately 24 minutes (or 0.4 hour) of that conversation pertained to a discussion on the advisability of Defendant answering media-related questions about Plaintiff's complaint before Defendant's final answer had been filed. As part of that 24-minute conversation, Attorney Ausburn also assisted Defendant in drafting a brief public statement consistent with the facts of the case and Defendant's legal strategy. Between April and May 2007, Attorney Ausburn spent approximately 1.5 hours drafting a public statement on the implications of the joint motion for preliminary injunction and the status of the case. Defendant claims it was concerned parents, donors, and community supporters would construe the joint motion as an admission of wrongdoing, and it needed legal assistance in drafting an accurate statement about the proceedings. Given the limited nature of these communications and the fact that they were narrowly focused on a specific need of Defendant as part of the instant litigation, this Court concludes the resulting 1.9 hours can be included as part of Defendant's fee award. *See, e.g., Cmtys. for Equity v. Michigan High Sch. Athletic Ass'n*, No. 1:98-CV-479, 2008 WL 906031, at *21 (W.D. Mich. Mar. 31, 2008) (deciding not to award fees when attorney expended 241 hours towards public relations, but noting limited circumstances do exist where media-related work can be compensated, such as when it pertains to narrowly focused public relations work (citing *Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993))).

Accordingly, based on Defendant's motion for attorneys' fees and Defendant's supplemental brief, the Court will award attorneys' fees to Defendant in the following amounts: for 2007, 127.4

hours at $154 per hour (total: $19,619.60);[7] for 2008, 559.3 hours at $159 per hour (total: $88,928.70);[8] for 2009, 300.57 hours at $165 per hour (total: $49,594.05); for 2010, 139.88 hours at $165 per hour (total: $23,080.20); for 2011, 55.63 hours at $168 per hour (total: $9,345.84);[9] and for 2012, 25.15 hours at $168 per hour (total: $4,225.20).[10]

This results in a total award of attorneys' fees in the amount of $194,793.59.

**B.     Paralegal Fees**

The parties do not dispute that paralegal expenses should be calculated at $50 per hour, which is the rate that was established in this district in 2008. *See Orange v. Comm'r of Soc. Sec. Admin.*, No. 4:09-cv-72, 2010 WL 4024921, at *1 (E.D. Tenn. Sept. 24, 2010) (Lee, M.J.). Plaintiff submits 210.96 total paralegal hours at $50 per hour, which results in a total of $10,548.[11]

**C.     Other Costs and Expenses**

---

[7] This time submission does not include the 0.3 hours from the April 25, 2007 entry withdrawn by Defendant.

[8] This time submission does not include the 0.6 hours from Defendant's withdrawn entries on September 18, 2008, October 2, 2008, and October 27, 2008. Defendant explained that the June 10, 2008 entry was never included in the fee award calculation.

[9] This calculation includes an additional 6.2 hours for David Myers and 2.5 hours for Deborah Ausburn and Matt Rosenkoff, as explained in the affidavits accompanying Defendant's supplemental brief (Court File No. 107).

[10] This calculation includes an additional 13.65 hours performed by David Myers and 11.5 hours performed by Deborah Ausburn in 2012 as explained in the affidavits accompanying Defendant's supplemental brief (Court File No. 107). Although Attorney Ausburn originally sought an additional 15.1 hours for her work in 2012, the affidavit and attached invoices supporting this request only accounts for 11.5 hours. Therefore, 11.5 hours was used in this calculation.

[11] This revised hourly total takes into account the 3.1 hours withdrawn by Defendant in light of Plaintiff's objection related to the paralegal time entries from April 25, 2007; May 1, 2007; and July 17, 2009.

Defendant seeks to recover litigation expenses not listed in its Bill of Costs such as Lexis legal research, attorney travel expenses, and witness service fees. The litigation expenses total $13,288.35.[12] Plaintiff does not object to these expenses.

Accordingly, the Court will grant in part Defendant's motion for attorneys' fees, expenses, and costs. Although the Court has not granted Defendant's motion in the exact amount or at the exact rate requested, the Court will award Defendant a total of $218,629.94 in attorneys' fees, expenses, and costs.

## IV.     MOTION TO AMEND

On February 17, 2012, Defendant filed a motion to amend its motion for attorneys' fees, expenses, and costs. Plaintiff did not file an objection. Attorney Deborah Ausburn, one of Defendant's attorneys, avers she inadvertently failed to include certain 2011 invoices from her current firm in the fee application and did not discover this failure until Defendant's supplemental brief was filed. The EAJA requires that a party seeking an award of fees and other expenses must submit a fee application within thirty days of the final judgment. 28 U.S.C. § 2412(d)(1)(B). Defendant seeks to amend its motion for attorneys' fees, expenses, and costs under the relation-back doctrine of Rule 15(c)(2). In particular, it asserts that the amendments at issue "arose out of the conduct, transaction, or occurrence" described in the initial fee application. Fed. R. Civ. P. 15(c)(2).

---

[12] This amount takes into account additional costs incurred in 2011 and 2012 in the amount of $222.24. These additional costs were submitted by Attorney Myers in an affidavit accompanying Defendant's supplemental brief (Court File No. 107).

14

Although Rule 15(c)(2) is ordinarily applied in the context of pleadings, the relation-back doctrine has been extended to apply to a party amending an EAJA fee application after the 30-day filing period has passed. *See Scarborough v. Principi*, 541 U.S. 401, 418 (2004) (noting the relation-back doctrine applied to a party's fee application under 18 U.S.C. § 2412, such that the defendant could amend the application after the 30-day filing period to include a "not substantially justified" allegation). Under this same rationale, the Court will grant Defendant's motion to amend.

Defendant's additional invoices reflect an additional 71.9 hours of attorney time, 3.25 paralegal hours, and $804.15 in expenses incurred in 2011. This results in a total of $12,079.20 in attorney fees (71.9 hours at $168 per hour), $162.50 in paralegal fees (3.25 hours at $50 per hour), and $804.15 in expenses, for a total award of $13.045.85. This amount combined with the amount awarded based on Defendant's original motion for attorneys' fees, expenses, and costs and the supplemental brief results in a total award of $231,675.79.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Defendant's motion for attorneys' fees, expenses, and costs (Court File No. 92) and **GRANTS** Defendant's motion to amend its motion for attorneys' fees, expenses, and costs (Court File No. 108). Defendant will receive an award of $218,629.94 in attorneys' fees, expenses, and costs based on its original motion and supplemental brief, and an additional award of $13.045.85 based on the invoices submitted with Defendant's motion to amend, for a **total award of $231,675.79**.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

16